## UNITED STATES  DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | | |
|---|---|---|
| LARRY L. ADAMS, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Case No. 07-2142 |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

In March 2007, Administrative Law Judge (hereinafter "ALJ") David Thompson denied Plaintiff Larry Adam's application for disability insurance benefits and supplemental security income.  The ALJ based his decision on a finding that Plaintiff can perform some of his past relevant work and, in addition, there are jobs available in significant numbers in the national economy that he can perform.

In August 2007, Plaintiff filed a Complaint for Judicial Review (#3) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny social security benefits.  In January 2008, Plaintiff filed his Motion for Summary Judgment or Remand (#12).  In February 2008, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#15).  After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment or Remand **(#12)** be **DENIED**.

## I.  Background
### A.  Procedural Background

Plaintiff filed an application for social security benefits in December 2003, alleging that he became disabled in October 2003.  The Social Security Administration (hereinafter "SSA") denied Plaintiff's application initially and upon reconsideration.  Plaintiff timely requested a hearing, which the ALJ held in March 2007.  Plaintiff was represented by counsel at the hearing.  At the hearing, Plaintiff and vocational expert Bob Hammond testified.  In March 2007, the ALJ

denied Plaintiff's application for benefits.  In June 2007, the Appeals Council denied Plaintiff's request for review of this decision, making the ALJ's decision the Commissioner's final decision.  In August 2007, Plaintiff appealed this decision by filing a complaint in federal court pursuant to 42 U.S.C. § 405(g).

## B.  Plaintiff's Background and Medical Records

Plaintiff's past work includes janitor, industrial packer, cook, and industrial spray painter. (R. 83.)  His December 2003 application alleged disability due to back pain and a sore thumb. Plaintiff also alleges problems with depression.  (R. 14.)

The record contains medical records beginning in 1998.  In June 1998, Plaintiff consulted Dr. Frank Wrestler, reporting low back pain, fatigue, and depression (R. 172); the doctor diagnosed mild degenerative disc changes without herniation, consistent with the MRI report (R. 211).  Dr. Wrestler's clinic notes from August 1998 state that Plaintiff "can work" and that Plaintiff "has learned to put [sic] with pain" and "wants no pain pill."  (R. 170.)  Clinic notes from January 1999 indicate that Plaintiff was taking no pain medication, but he was taking Amitriptyline (depression), hytrin, and Lipitor (cholesterol).  In September and October 1999, Plaintiff complained of sinus pain.  Clinic notes from December 1999 indicate that Plaintiff's hypertension was controlled and his hyperlipidemia was being treated.  (R. 163.)  In January2001, Plaintiff twisted his left ankle; an x-ray showed no fracture or bone injury. (R. 190.)  In July 2001, Plaintiff's ankle was fine but he complained of pain in his right shoulder with numbness and tingling radiating down his right arm for about one month.  (R. 158.) Plaintiff told the doctor that he had slipped at work and reinjured his back in June 2001. (R. 158.)  In February and March 2002, Plaintiff's lab tests showed some high cholesterol levels and Dr. Wrestler noted he was taking Lipitor.  (R. 184, 187.)  Clinic notes also indicate that Plaintiff had complained of back pain since 1992.  (R. 157.)  Clinic notes from April 2002

indicate thigh pain and weakness secondary to overuse syndrome and a possible "flare-up of disc" when Plaintiff lifts something; the doctor suggested he "watch lifting/bending posture." (R. 156.)

In August 2002, at Plaintiff's request, Dr. Wrestler referred Plaintiff to Dr. Samuel Young.  (R. 155.)  In October 2002, Plaintiff reported that he had sprained his ankle in April and was in a cast for three to four weeks.  He also reported that he had experienced lower back pain for six years and it has "been getting worse."  (R. 155.)  The doctor noted Plaintiff's achilles was tender and diagnosed achilles tendonitis.  He suggested that Plaintiff use ankle support. (R. 155.)

Clinic notes from January 2003 related to Plaintiff's annual physical examination indicate that he has bulging at L4-L5, a degenerative disk at S1, hypertension, and hyperlipidemia.  (R. 152-53.)  Dr. Wrestler's clinic notes from February 2004 indicate hypertension, hyperlipidemia, and chronic low back pain.  He noted that Plaintiff had fair range of motion in his back.   Plaintiff reported at that time that he could not afford medication so he stopped taking everything in October 2003.  (R. 146.)

In September 2002, Plaintiff consulted Dr. Young, a neurologist, regarding his back pain. (R. 144.)  He told Dr. Young that, around August 13, he bent over at work and felt something pop in the right side of his back.  Later that evening, he bent over to pick something up and felt such severe pain in his right leg and back that he had to lie on the floor for one to two hours.  He missed work for three days and continues to have low back pain.  He told Dr. Young that if he walks up three steps, he develops numbness in his right leg and weakness.  He is not taking any pain medication.  Dr. Young noted that 1992 CT scan showed a herniated disc on the right at 4-5.  A 1998 myelogram indicated a middle line disc at 4-5 and 5,1.  A June 1998 MRI scan showed degenerative disc changes without herniation.  The doctor diagnosed chronic low back pain on the right beginning in 1992 with a recent flare-up.  He suggested getting an MRI, starting Plaintiff on an exercise program, and performing an EMG of the right lower extremity to check on the weakness Plaintiff experiences when climbing stairs.  (R. 144.)  The subsequent MRI

3

indicated some spinal stenosis at 4-5 and "to a lesser degree at 3-4." (R. 143.)  The radiologist noted that the test technique was different from the 1998 exam, but comparing the two exams "suggests that the disc disease and relative degree of lumbar spinal stenosis has progressed." (R. 143.)

Plaintiff had a follow-up appointment with Dr. Young in October 2002, at which he reported intermittent low back pain.  (R. 142.)  Dr. Young advised Plaintiff to treat the back conservatively.  A subsequent MRI in January 2004 indicated that there had been essentially no significant change from the previous studies in 1998 and 2002; noting slight disc herniation at the L4 level and a lesser degree at the L3-L4 level.  The report stated "[o]verall remain stable and has not changed."  (R. 141.)

In April 2004, Dr. Kaushik Patel evaluated Plaintiff.  He noted that Plaintiff reports sporadic back pain that occurs only when he moves fast, bends frequently, or lies down for more than ten hours.  If he sits for more than 20 to 30 minutes, he will have to get up and move around.  Plaintiff rated the intensity of his pain at seven on a scale of one to ten and it may last for hours once it starts.  Plaintiff stated that after standing 20 to 30 minutes, his back will hurt. There is no limit on the distance he can walk as long as he can do it at his own pace.  Plaintiff has to hold onto a rail while climbing stairs because he cannot put weight on his right leg. Dr. Patel noted that Plaintiff's blood pressure was 160/98 and that Plaintiff had a history of chronic back pain, hypertension, and hypercholesterolemia.  (R. 225.)  Dr. Patel noted that Plaintiff did not need to use an assistive device to walk.  His straight leg raise was 90 degrees on the right and 80 degrees on the left.  (R. 226.)

Also in April 2004, William Kohen, a psychologist, performed a psychological evaluation.  Plaintiff told him that he first saw a psychiatrist in 1995 or 1996 and took Paxil for treatment of his chronic depression.  Plaintiff stated that he stopped taking Paxil after one year and did not need it any more.  He had not been depressed since then, but he was now depressed because he had no job.  Regarding his back problems, Plaintiff told Dr. Kohen that he does not experience back pain but rather the pain goes down his right leg.  Plaintiff stopped taking pain

4

medication because he did not want to become addicted to it.  Plaintiff also told Dr. Kohen that his right thumb has been sore for about a year and a half and he cannot grip things with it.  He is not getting any treatment for it.  (R. 229.)

Dr. Kohen observed that Plaintiff appeared to be in physical discomfort but he did not display any psychomotor agitation or retardation.  He communicated well and his thought processes were organized and lucid.  Dr. Kohen estimated that Plaintiff's intellectual functioning falls in the low average range and opined that Plaintiff's primary concern seemed to be medical problems and associated pain.  He is situationally depressed due to medical problems, unemployment, and his financial condition but is not presently being treated for depression.  Dr. Kohen opined that Plaintiff's ability to sustain concentration depends on the level of pain at any given time.  His persistence and adaptability are mainly limited by pain and, "to some degree," by his depressive feelings.  (R. 230.)  Dr. Kohen diagnosed Plaintiff with major depressive disorder in partial remission.  (R. 230.)

In June 2004, Dr. Phyllis Brister completed a Psychiatric Review Technique worksheet and a Mental Residual Functional Capacity Assessment.  (R. 231-44, 245-47.)  She reported that his activities of daily living as of March 2004 included meal preparation, shopping, errands, reading, and paying bills.  (R. 243.)  In assessing whether Plaintiff satisfied the "B" criteria of Listing 12.04, Dr. Brister noted that he had mild limitations in the areas of daily living activities and maintaining social functions and he had moderate difficulties in maintaining concentration, persistence, or pace.  (R. 241.)  In assessing his mental RFC, she noted that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions.  (R. 245.)  He was not significantly limited in any other category.  She noted the diagnosis of major depression in partial remission and translated her worksheet observations to a narrative RFC, opining that he was cognitively intact, able to understand, recall, and execute simple routine operations with adequate persistence and pace, could tolerate occasional social contacts, and adapt to routine.  (R. 247.)

5

In June 2004, Dr. Sandra Bilinsky performed a Physical Residual Functional Capacity Assessment of Plaintiff.  (R. 253-59.)  She noted that the record contained no treating or examining source statement.  She opined that he could occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand or walk for about six hours in an eight-hour day, and sit about six hours in an eight-hour day.  He had no limitations on his ability to push and pull, no postural limitations, no visual limitations, no manipulative limitations, no environmental limitations, and no communicative limitations.

### C.  The Hearing Before the ALJ

The ALJ held a hearing in March 2007, during which Plaintiff and vocational expert (hereinafter "VE") Bob Hammond testified.

Plaintiff was 57 years old at the time of the hearing,  He weighs 192 pounds and stands 5'7" tall.  He is single and lives by himself in an apartment.  He drove to the hearing.  Plaintiff completed the ninth grade and subsequently got his GED.  He can read and write.  Plaintiff testified that he last worked in October 2004.  Social Security records indicate that he had income of $3,400 in 2004 and just over a thousand dollars in 2005.  Plaintiff testified that he worked at a cheese factory in 2004, and his job required him to lift 30 pounds all day long.  He also worked as a paint sprayer.

Plaintiff takes Aceon for blood pressure, Crestor for high cholesterol, dichlorofine sodium for pain, and Amitriptylene for depression.  (R. 286.)  Plaintiff testified that the blood pressure medication and high cholesterol medication are effective.  He stated that the medications make him feel drowsy, dizzy, and tired all the time.

Plaintiff testified that he cannot work because of back pain that goes down his thigh to his knee.  He stated that it aggravates his back when he moves any different way, tries to get up out of a chair too quickly, stands for a long period of time, walks for a long distance, or picks something up.  (R. 288.)  He cannot walk up stairs, but he can walk down.  He can sit for about 10 minutes before he has to stand up and move around, stand for 10 to 15 minutes before he has

6

to sit down, and alternate between sitting and standing for about one hour before he would have to lie down.  (R. 289-90.)  He can walk half a block.  He can lift and carry a gallon of milk (about eight pounds).  He cannot bend over to pick something up and he cannot push and pull with his hands and arms.  (R. 289.)  Plaintiff first injured his back in 1992.  He reinjured it in 2001 and 2004.

Plaintiff testified that he is depressed because of his physical condition, but his depression does not bother him during the day.  (R. 289.)

Plaintiff lives alone, but his fiancée cooks for him, does laundry, washes dishes, cleans his house, and does grocery shopping.  He takes care of his personal hygiene, watches television for four to six hours a day, and reads "some."  (R. 284.)

Plaintiff testified that his back condition has gotten worse so that he can no longer sit for as long as he could and he cannot clean his house.  Plaintiff takes naps every day.  He has used a cane for balance for three or four months.  Dr. Wrestler did not prescribe a cane, nor did anyone train him how to use it, but Plaintiff testified that it helps relieve the pain he feels when walking.  Plaintiff also testified that he had been missing work about two days a week or six days a month before he reinjured his back.  (R. 206.)

The ALJ questioned Bob Hammond, the VE, about whether a hypothetical individual could perform Plaintiff's past work if the individual had the same age, education, and experience as Plaintiff and was limited to medium work and capable of all but detailed instructions.  The VE stated that such an individual could perform the jobs of industrial packer and industrial spray painter.  (R. 297.)  The VE testified that Plaintiff's past position of cook had some skills transferable to work at the light exertional level, including some math and reasoning at level three that would mean he would be able to read, understand, and deal with others in detailed activity.  (R. 298.)  The VE also testified that he would have transferable skills including organizational skills, an ability to follow detailed directions, hand-eye coordination, and fine finger dexterity.  (R. 306-7.)  However, the ALJ limited the hypothetical individual to no

7

detailed instructions.  With that in mind, the VE testified that the hypothetical individual could perform certain light jobs at the semi-skilled level that do not require detailed instructions.  (R. 299.)  In addition, the individual could perform certain semi-skilled jobs at the sedentary level, and certain sedentary jobs with a sit-stand option.

Plaintiff's attorney asked the VE whether the individual could do Plaintiff's past work if he was limited to working a total of one hour; the VE replied that this limitation would eliminate all positions because it would eliminate full-time work.  (R. 300.)  The VE also testified that employers have low tolerances for absenteeism especially during the initial probationary period of thirty to ninety days.  As a result, in unskilled positions, less than two absences a month would be tolerated.  (R. 301.)  If an individual missed up to six days a month, he would probably be unable to hold a job.

The VE also noted that, although the cook job provided transferable skills to jobs such as line work, an individual does not need transferable skills to perform that work and other entry-level positions and he does not need any transferable skills to perform unskilled work.  (R. 307-8.)

Plaintiff's attorney asked the ALJ to take judicial notice of the prior decision to award Plaintiff social security benefits based on alcoholism.  (R. 308-9.)  In that decision, the ALJ determined that Plaintiff was unable to perform his past relevant work as a cook, dishwasher, or kitchen helper.  The ALJ also determined that Plaintiff could lift only 20 pounds occasionally and 10 pounds frequently at that time, could stand and walk two hours at a time, or six hours in an eight-hour day, and was restricted to light work.  (R. 309.)  The attorney argued that if the ALJ used a different onset date (Plaintiff's 55th birthday) instead of the alleged onset date of October 23, 2003, Plaintiff would "grid out" under Rule 202.04 of Table No. 2 (Pt. 404, Subpt. P, App. 2) if he was limited to unskilled work and under Rule 202.06 if he was able to perform skilled or semi-skilled work and skills were not transferable.  (R. 310.)

**D.  The ALJ's Decision**

To be entitled to social security disability benefits, a plaintiff must show that he is unable to engage in any substantial gainful activity because of a medically-determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 416(i)(1)(A).  Social Security regulations outline a five-step inquiry to be followed in determining whether a claimant is disabled.  20 C.F.R. § 416.920(a)-(f).  The Commissioner must determine in sequence: (1) whether the claimant is currently employed; (2) whether he has a severe impairment, i.e., one that significantly limits his physical or mental ability to perform basic work activities; (3) whether his impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy.  Once the claimant has satisfied Steps One and Two, he will automatically be found disabled if he suffers from a listed impairment.  Between steps three and four, the Commissioner determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations.  20 C.F.R. § 404.1545.  If the claimant does not have a listed impairment but cannot perform his past work, the burden shifts to the Commissioner to show that the claimant can perform some other job.  *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

Here, the ALJ found that Plaintiff had degenerative disc disease and depression, impairments that are severe within the meaning of the Regulations.  However, he did not have an impairment that satisfied the Listing of Impairments under Listings 1.04 (disorders of the spine) or 12.04 (depression).  Plaintiff does not challenge this finding.

The ALJ next determined that Plaintiff has the residual functional capacity (hereinafter "RFC") to lift 50 pounds occasionally and 25 pounds frequently and he can perform all work activity other than work that requires attention to highly detailed job tasks.  (R. 19.)  Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff was able to perform his past relevant work of an industrial spray painter.  The ALJ then considered whether Plaintiff could perform other jobs if he could not perform his past relevant work.  The ALJ concluded that

Plaintiff could perform a significant number of jobs within the framework of Medical Vocational Rules 203.08, 202.08, and 201.07 based on his transferable skills.  Even if the claimant did not have transferable skills, he could perform a significant number of jobs within the framework of Medical Vocational Rule 203.14 because the limitation precluding highly detailed work activity would not preclude a significant number of jobs.  Therefore, the ALJ concluded that Plaintiff is not disabled as defined by the Social Security Act.

## II.  Standard of Review

An ALJ's decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The United States Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. New York*, 305 U.S. 197 (1938)).  Where conflicting evidence may allow reasonable minds to differ as to whether a claimant is disabled, the responsibility for making that determination rests with the ALJ.  *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).  Therefore, the question for review is not whether the claimant is disabled, but whether substantial evidence in the record supports the ALJ's finding of no disability.  *Id.* at 977.  The Court defers to the ALJ's determinations of credibility, "so long as they find some support in the record."  *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993).

## III.  Discussion

Plaintiff argues that the RFC is incorrect based on the objective medical evidence, Plaintiff's subjective complaints, and a previous social security finding.  Plaintiff also contends that the ALJ erred at Step Four and Step Five.

### A.  The Previous Social Security Finding

Plaintiff's counsel stated at the hearing that an ALJ determined in November 1997 that Plaintiff had the RFC to perform only light work.  (R. 309.)  Plaintiff acknowledges that an ALJ is not bound by past ALJ decisions, but contends that the ALJ erred by failing to consider the

past RFC finding as evidence and to give it appropriate weight.  Plaintiff also contends that the ALJ has failed to explain how Plaintiff became capable of performing medium work at age 57 when he was restricted to light work at age 48 and the objective medical evidence establishes that his back condition has gotten worse since he was 48.

In support of his argument, Plaintiff relied on Acquiescence Ruling 00-1(4) (hereinafter "AR 00-1(4)"), which specifically addressed a Fourth Circuit case, *Albright v. Commissioner of the Social Security Administration*, 174 F.3d 473 (4th Cir. 1999).  *See* AR 00-1(4), p. 4 (stating that the AR applied only to disability findings in cases involving claimants who reside in Maryland, North Carolina, South Carolina, Virginia, or West Virginia).

A "finding" is not evidence; it is a conclusion based on evidence.  This is consistent with AR 00-1(4).  In a section describing how *Albright* differed from the SSA's interpretation of the Regulations, the SSA stated that "*SSA does not consider prior findings* made in the final determination or decision on the prior claim *as evidence* in determining disability with respect to the unadjudicated period involved in the subsequent claim.  AR 00-1(4), p. 4 (emphasis added).  Accordingly, the Court concludes that the ALJ did not err by failing to consider the past RFC finding as evidence.

AR 00-1(4) also states as follows:

> In a subsequent disability claim, SSA considers the issue of disability with respect to a period of time that was not adjudicated in the final determination or decision on the prior claim *to be a new issue that requires an independent evaluation* from that made in the prior adjudication.  Thus, when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues de novo in determining disability with respect to the unadjudicated period.

AR 00-1(4), p. 4.  Consistent with this, the Seventh Circuit court has made it clear that each disability application is to be considered independently.  *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998) ("a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994").  In *Groves*, the court noted that evidence from past applications is admissible in a subsequent proceeding.  *Id.*  No matter what happened in past proceedings, an

ALJ must base his decision on the administrative record as a whole.  *Rucker v. Chater*, 92 F.3d 492, 495 (7th Cir. 1996) (stating that an ALJ's finding may be binding with respect to disability for a particular time period, but it has "no effect . . . on an application for disability benefits for disability benefits for a subsequent time period").

Accordingly, the ALJ in this case need not explain why he reached a different conclusion than the ALJ in the previous proceeding.  Instead, he must independently evaluate the medical record as a whole.  Other than making general statements, Plaintiff has not pointed to particular medical evidence from the previous proceeding that the ALJ failed to consider in the current proceedings.

### B.  Objective Evidence

Plaintiff next contends that the ALJ erred when assessing the objective evidence by (1) failing to recontact some of the doctors; (2) relying on Dr. Bilinsky's physical RFC; and (3) wrongly ignoring or dismissing certain evidence.

### 1.  Whether the ALJ Should Have Recontacted Some Doctors

Plaintiff contends that the ALJ erred by failing to recontact some of Plaintiff's treating and examining doctors.

Plaintiff first contends that the ALJ erred by not recontacting Dr. Wrestler, stating that "[r]ather than ignoring the treating physician's notes because he did not give an RFC opinion, the ALJ should have recontacted him to get such an opinion."  (#13, p. 10.)  Other than describing the case law, Plaintiff did not develop this argument.

The ALJ has a duty to develop the record.  *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991).  An ALJ must recontact medical sources "only when the evidence received is inadequate to determine whether the claimant is disabled."  *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); 20 C.F.R. § 404.1512(e).  Thus, the relevant question is whether the medical evidence available to the ALJ provides a sufficient basis for a decision.

Judicial review of administrative decisions is deferential, and courts must respect the authority of an ALJ to decide how much evidence is necessary in a given case. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993) ("[I]t is always possible to do more. How much evidence to gather is a subject on which district courts must respect the [Commissioner's] reasoned judgment."). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala,* 13 F.3d 243, 246 (7th Cir. 1994). This is particularly true in light of the fact that the claimant, not the ALJ, bears the burden of presenting medical evidence of an impairment, which means that the claimant bears the risk of uncertainty. *Eichstadt v. Astrue,* 534 F.3d 663, 668 (7th Cir. 2008); 20 C.F.R. § 404.1512(a). Furthermore, when a claimant is represented by counsel, the ALJ is entitled to assume he is making his best case. *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987).

Here, the evidence was adequate for the ALJ to reach a decision, and the ALJ acted within his discretion in deciding not to recontact Dr. Wrestler. *See Skarbeck*, 390 F.3d at 504. Thus, the ALJ's failure to recontact Dr. Wrestler does not constitute reversible error.

Plaintiff also contends that the ALJ erred by failing to request medical source statements[1] from Drs. Patel and Kohen. In support of this argument, Plaintiff relies on 20 C.F.R. § 404.1519n, which states, "we will ordinarily request, as part of the consultative examination process, a medical source statement about what you can still do despite your impairment(s)." *See also* SSR 96-5p ("Adjudicators are generally required to request that acceptable medical

---

[1]The form titled "Medical Source Statement of Ability to Do Work-Related Activities" provides a tool for assessing physical or mental abilities. SSR 96-5p distinguishes between a medical source statement and an RFC assessment, stating as follows:

> A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

SSR 96-5p.

sources provide these statements with their medical reports").  In the absence of medical source statements from Drs. Patel and Kohen, the ALJ relied on the nonexamining State agency physician's determination of what the consulting examiners' reports meant and her RFC assessment.  Plaintiff contends that this constituted reversible error.

Regarding the ALJ's obligation to recontact Drs. Patel and Kohn, Plaintiff relies on 20 C.F.R. § 404.1519n.  However, the language of that Regulation does not mandate that the ALJ obtain a medical source statement from each medical source.  *See* 20 C.F.R. § 404.1519n (stating "we will ordinarily *request* . . ." (emphasis added)).  This is consistent with Seventh Circuit authority.  As noted above, an ALJ must recontact medical sources "only when the evidence received is inadequate to determine whether the claimant is disabled."  20 C.F.R. § 404.1512(e).   For example, in *Skinner v. Astrue*, the court determined that the ALJ did not err by failing to request a medical source statement because the evidence in that case was adequate to determine whether the claimant is disabled.  *Skinner v. Astrue*, 478 F.3d 836, 843-44 (7th Cir. 2007) The court stated that the ALJ's "decision not to obtain an MSS or further information from Dr. Glavin did not render the record incomplete."  *Id.*

While it is true that the ALJ has a duty to make a complete record, this requirement can reasonably require only so much.  *Scheck v. Barnhart,* 357 F.3d 697, 702 (7th Cir. 2004).  As noted above, in determining whether an ALJ has sufficiently developed the administrative record, courts "accept reasonable assessments by administrative officials about how much evidence is enough." *See Kendrick,* 998 F.2d at 457.  Here, the ALJ determined that the evidence was adequate for his analysis and acted within his discretion in deciding not to request medical source statements from Drs. Kohen and Patel.  *See Skarbek*, 390 F.3d at 504.  The Court agrees. Thus, the ALJ's failure to recontact Drs. Patel and Kohen did not constitute reversible error.

### 2.  Whether the ALJ Erred by Relying on Dr. Bilinsky's RFC Assessment

Plaintiff also contends that the ALJ erred by relying on the opinion of Dr. Bilinsky, the State agency medical consultant, as the basis for his RFC finding because Dr. Bilinsky was not qualified to give an opinion regarding Plaintiff's neurological impairment and was no longer

practicing medicine.  The Commissioner responds that Plaintiff cannot challenge Dr. Bilinsky's qualifications because Plaintiff failed to raise this issue earlier, the record contains no evidence to support Plaintiff's contention that Dr. Bilinsky is unqualified, and another doctor whose qualifications have not been questioned affirmed Dr. Bilinsky's findings.  *Ehrhart v. Sec'y of Health & Human Servs.,* 969 F.2d 534, 537 n.4 (7th Cir. 1992) ("Issues that a claimant fails to raise before the district court are waived on appeal."); *Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993) (stating that, when the Appeals Council denies review, courts may not consider evidence that was not presented to the ALJ).  The Court agrees.

In addition, Plaintiff contends that the ALJ erred by relying on Dr. Bilinsky because an ALJ cannot reject an examining physician's opinion based on the contradictory opinion of a nonexamining physician.  In support of this premise, Plaintiff relies on several cases including *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (holding that the "contradictory opinion of a non-examining physician does not, by itself, suffice" to reject an examining physician's opinion); *Allen v. Weinberger*, 552 F.2d 781, 786 (7th Cir. 1977) (quoting *Landess v. Weinberger*, 490 F.2d 1187, 1190 (8th Cir. 1974) ("The (medical) advisers' assessment of what other doctors find is hardly a basis for competent evaluation")); *Oakes v. Astrue*, 258 Fed. App'x 38, 45 (7th Cir. 2007) (unpublished) (stating that an ALJ impermissibly "effectively substituted his own judgment" for the examining doctor's judgment when he accepted the nonexamining doctor's opinion over the examining doctor's opinion).

The Regulations and the Seventh Circuit recognize that State agency reviewing physicians and psychologists are experts in their field and the ALJ is entitled to rely on their expertise.  *Ottman v. Barnhart*, 306 F. Supp. 2d 829, 839 (N.D. Ind. 2004) (citing *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990)); 20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act.").  Furthermore, the Seventh Circuit has recently held that decisive medical opinion contrary to that of a treating physician can come even from physicians "who had not treated or even examined" the claimant.  *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006).  *Hofslien* made clear that

15

once contrary, competent medical evidence contradicting a reating physician is introduced, the ALJ no longer gives primacy to the treating physician's opinions and the treating physician's evidence "is just one more piece of evidence for the administrative law judge to weigh." *Id*. at 377.

Finally, Plaintiff has not indicated what opinion evidence is contradicted by Dr. Bilinsky's opinion.  Based on all the above, the Court concludes that the ALJ did not err by relying on Dr. Bilinsky's RFC assessment.

### 3.  Whether the ALJ Improperly Ignored or Dismissed Significant Evidence

Plaintiff next contends that the ALJ wrongly ignored or dismissed significant evidence, including Dr. Wrestler's case notes, evidence from Drs. Kohen and Brister regarding Plaintiff's mental limitations, evidence of depression, and evidence related to Plaintiff's medication and side effects.

Regarding Dr. Wrestler's medical records, Plaintiff did not indicate what significant evidence from Dr. Wrestler the ALJ ignored.

### a.  Plaintiff's Mental Limitations

Plaintiff contends that the ALJ erred by rejecting Dr. Kohen's and Dr. Brister's opinions about Plaintiff's mental limitations.  Dr. Kohen's report noted that Plaintiff's pain level affected his concentration, persistence, and adaptability.  (R. 230.)  Dr. Brister's Psychiatric Review Technique worksheet indicated that Plaintiff had moderate difficulties in maintaining concentration, persistence, and pace.  (R. 241.)  Dr. Brister's mental RFC assessment indicated that Plaintiff had moderate difficulty understanding, remembering, and carrying out detailed instructions, and no other significant limitations.  (R. 245.)  Dr. Brister's summary RFC stated that Plaintiff is "cognitively intact; able to understand, recall & execute simple routine operations w/adequate persistence & pace.  Can tolerate occasional social contact & adapt to routine."  (R. 247.)  The Court notes that a Psychiatric Review Technique addresses whether a

claimant's mental impairments satisfy the Listings, and a mental RFC assessment addresses a claimant's mental limitations in general.

Plaintiff first contends that the ALJ mischaracterized Dr. Kohen's report.  The Court disagrees.  Dr. Kohen summarized his conclusions as follows:

> Mr. Adams' primary concern seems to be medical problems and associated pain.  He has a herniated disk, degenerative disk, and sore right thumb . . . .  Mr. Adams referred to his chronic history for depression, although he has not felt as severely depressed for several years now.  However, Mr. Adams is situationally depressed due to his medical problems, unemployment status, and poor financial condition.  He is not presently being treated for depression.

> In my opinion, Mr. Adams has adequate memory and comprehension.  He ability to sustain concentration depends on the level of pain at any given time.  Mr. Adams possesses adequate social interaction skills.  His persistence and adaptability are mainly limited by his physical problems and associated pain and to some degree his depressive feelings.

(R. 230.)  Dr. Kohen diagnosed Plaintiff with major depressive disorder in partial remission. (R. 231.)  In his decision, the ALJ described Dr. Kohen's report as stating that Plaintiff's persistence, concentration, and adaptability were mainly limited by his physical problems. (R. 17.)  This is not a mischaracterization; Dr. Kohen's reference to pain clearly refers to his "medical problems and associated pain."  (R. 230.)

Plaintiff also contends that the ALJ erred by rejecting Dr. Brister's opinion that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace.  (R. 241, Psychiatric Review Technique.)  Regarding this opinion, the ALJ stated as follows:

> The undersigned takes issue with the state agency determination in terms of the moderate limitation in concentration and attention.  The state agency appears to have based its finding on the claimant's level of pain and not on depression only.  The claimant's allegations of moderate to severe pain are found to be not credible for the aforementioned reasons.  The consultative examination with Mr. Kohen did not indicate any difficulty with concentration and attention.  As a result, the record does not support more than a *mild* limitation in concentration and attention.

R. 17 (emphasis in original).  The Rating of Functional Limitations from the Psychiatric Review Technique worksheet asks the evaluator to indicate "to what degree the following functional

17

limitations . . . exist *as a result of the individual's mental disorder*(s)."  (R. 241 (emphasis
added).)  Because Dr. Kohen's report of  limitations on concentration was based on Plaintiff's
physical pain and not on depression, Dr. Brister arguably erred by including moderate limitations
on concentration in her Psychiatric Review Technique worksheet.  Dr. Kohen also noted that
Plaintiff had limitations on persistence and adaptability that were based primarily on pain, but
also on depressive feelings.  Moreover, in assessing Plaintiff's mental RFC, Dr. Brister noted
that Plaintiff was moderately limited in his ability to understand, remember, and carry out
detailed instructions, but he was not significantly limited in any other category of functional
limitations related to sustained concentration and persistence.  (R. 245-46.)  Under these
circumstances, the Court cannot conclude that the ALJ erred by rejecting Dr. Brister's opinion
that Plaintiff had moderate limitations in concentration, persistence, and pace.

Plaintiff also contends that the ALJ erred by impermissibly phrasing his mental
limitations as a vocational conclusion when questioning the VE.  The ALJ stated in his decision
that he gave Plaintiff the benefit of the doubt regarding his deficits in concentration and attention
by finding that Plaintiff could perform all work activity other than work that requires attention to
highly detailed job tasks.  When questioning the VE, the ALJ described the hypothetical
individual as "[c]apable of all but detailed instructions."  (R. 297.)

Courts have not reached a clear consensus regarding whether it is appropriate for an ALJ
to describe a mental limitation in terms of the work a claimant can perform as opposed to
describing the limitation itself and "allowing the vocational expert to conclude on his own what
types of work [the] plaintiff can perform."  *Kusilek v. Barnhart*, No. 04-C-310-C, 2005 WL
567816, *4 (W.D. Wis. March 2, 2005).  Many cases have considered the issue and, as the
district court explained in *Kusilek*, "the lesson of the cases so far appears to be that an
administrative law judge is free to formulate his mental residual functional capacity assessment
in terms such as 'able to perform simple, routine, repetitive work' so long as the record
adequately supports that conclusion."  *Id.*

Here, Dr. Brister translated her worksheet observations into a narrative RFC assessment, stating, among other things, that Plaintiff is "cognitively intact; able to understand, recall & execute simple routine operations w/adequate persistence & pace." (R. 247.) Based on this assessment, the Court concludes that the record adequately supports the ALJ's limitation to work that does not require "attention to highly detailed job tasks." *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (holding that the ALJ's finding that the plaintiff could perform repetitive, low-stress work was proper despite consulting psychologists' conclusion that plaintiff had "moderate" limitations in 3-5 abilities listed summarily on mental RFC worksheet, because one consultant "went further and translated those findings into a specific RFC assessment, concluding that Johansen could still perform low-stress, repetitive work"). Dr. Brister's assessment that Plaintiff can do simple work "w/adequate persistence & pace" address the limitations indicated in the worksheet portion of the Mental Residual Functional Capacity Assessment. Accordingly, the Court concludes that the ALJ's limitation to work that did not require attention to highly detailed job tasks adequately takes into account Plaintiff's mental limitations.

Plaintiff also contends that the ALJ erred by disregarding evidence of depression when he found that Plaintiff had no limitations due to depression alone. The Court disagrees. The ALJ acknowledged that Plaintiff suffered from depression but stated that it was not severe, based on Plaintiff's ability to function independently and his testimony at the hearing that he did not have problems during the day because of his depression. (R. 288.) Furthermore, the ALJ conceded that Plaintiff had *mild* limitations in certain mental functional areas, including activities of daily living, maintaining social functioning, and concentration and attention. (R. 17-18.) This is consistent with Dr. Brister's evaluation of the severity of Plaintiff's depression as indicated in the Psychiatric Review Technique worksheet and with Dr. Kohen's assessment. Based on this analysis, the Court concludes that the ALJ adequately considered Plaintiff's depression.

**b.  Plaintiff's Side Effects**

Finally, Plaintiff argues that the ALJ erred by failing to consider the effect of Plaintiff's medications on his ability to work and failing to include his side effects in the hypothetical questions to the VE.

At the hearing, the ALJ confirmed Plaintiff's current medications, including dichlorofine sodium for pain.  (R. 286, referring to R. 95.)  Plaintiff also testified that he experiences drowsiness and dizziness from his medications.  (R. 286, "really bad" side effects; R. 287, side effects include drowsiness, dizziness, "tired and sleepy all the time.  No energy . . . dozing off in the middle of the afternoon.")  Nevertheless, in the decision, the ALJ incorrectly stated that Plaintiff was not taking any medications for pain.  (R. 16, stating that Plaintiff is not taking any narcotic or over-the-counter medications for pain.)

Although an obvious error such as this is troubling, "[t]he ALJ is not required to make specific findings concerning the side effects of prescription drugs on the claimant's ability to work."  *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir.1994).  An argument that the ALJ did not discuss the side effects of medication is essentially an argument that the ALJ's decision is not supported by substantial evidence.  *Id.*  Here, Plaintiff's testimony constituted the only evidence in the record regarding side effects.  The ALJ found "significant reason to doubt" Plaintiff's credibility (R. 16) and the Court concludes below that the ALJ did not err when assessing Plaintiff's credibility.  Thus, although the ALJ did not discuss Plaintiff's testimony that his medication made him tired and sleepy, he doubted Plaintiff's credibility generally based on a number of factors.  In the absence of other evidence supporting the existence of side effects limiting Plaintiff's ability to work, the Court concludes that the ALJ's failure to discuss side effects does not provide grounds for remand.

**C.  Subjective Evidence**

Plaintiff next argues that the ALJ improperly evaluated Plaintiff's credibility.  Plaintiff contends that the ALJ erred by construing the medical evidence against him, failing to consider the effects Plaintiff's medications and side effects would have on his ability to work, improperly

considering Plaintiff's seeking unemployment benefits, assuming evidence not in the record, and considering Plaintiff's inconsistent testimony regarding his reports of pain and his testimony that he had collected workers' compensation benefits.  Overall, Plaintiff contends that the ALJ failed to consider the totality of the objective medical evidence when assessing credibility.

Plaintiff also argues generally that Plaintiff's subjective complaints find support in the evidence in the record, including (1) the fact that he had chronic back pain, degenerative disc disease, and herniated discs; and (2) Dr. Brister and Dr. Kohen's opinions that Plaintiff's pain and depression interfered with his social interactions, concentration and pace, and ability to remember and follow detailed instructions.  The Court has already addressed this evidence, and the ALJ acknowledges that Plaintiff has chronic back pain, degenerative disc disease, and herniated discs.

The ALJ's credibility finding is based on the following reasoning:  (1) the objective findings do not support Plaintiff's claims; (2) clinical findings do not support Plaintiff's claims that he has severe limitations; (3) Plaintiff's descriptions of his pain was inconsistent; he told Dr. Patel that his pain was sporadic and he told Dr. Kohen that his pain was a constant throbbing; (4) Plaintiff's testimony regarding his workers' compensation claim was inaccurate; (5) Plaintiff lied under oath as to being ready, willing, and able to work when he applied for unemployment, and at the same time, he told the SSA (under oath) that he was unable to work; (6) Plaintiff had income in 2004 and 2005 but he testified that he did not know where it came from; (7) Plaintiff's ability to work in 2004 and 2005 (as indicated by his income) suggests that he is more physically capable than he presents; and (8) Plaintiff came to the hearing using a cane, but he used it improperly.  The ALJ also noted that Plaintiff was not undergoing treatment for back pain, he has not had to go to the emergency room for pain, and he has not required surgery to relieve the pain.  None of his treating doctors have restricted his activities or opined that he could not work.

The Seventh Circuit court has outlined a very deferential standard of review regarding credibility.  This Court may reverse the ALJ's findings on credibility only when they are patently wrong.  *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).  A court should conclude that a

credibility determination is patently wrong only when it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).  An ALJ's credibility assessment will stand "as long as [there is] some support in the record."  *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (citing *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007)).  However, reviewing courts have greater flexibility to review a credibility determination when it rests on objective factors or fundamental implausibilities rather than on the ALJ's subjective observations. *Herron*, 19 F.3d at 335.

Plaintiff contends in part that the ALJ erred by construing medical evidence against him and considering inconsistent testimony regarding his claims of pain and workers' compensation benefits.  In his brief, Plaintiff attempts to explain any inconsistencies and present his testimony in the best possible light.  For example, Plaintiff contends that his testimony describing his pain is not necessarily inconsistent and his inconsistent testimony about workers' compensation benefits was inadvertent and insignificant.  However, an ALJ is not required to make all inferences regarding credibility in Plaintiff's favor.

Plaintiff also objects to the ALJ's considering that he sought unemployment benefits during the time he was purportedly disabled.  In order to submit such an application, a worker must represent that he is ready, willing, and able to work.  *Martin v. Chater*, No. 95 C 0245, 1995 WL 505955, *7 (N.D. Ill. Aug. 23, 1995) (unreported); *Vreeland v. Astrue*, No. 06-C-466-C, 2007 WL 5414923, *13 (W.D. Wis. Mar. 27, 2007) (unreported).  Plaintiff notes that the Seventh Circuit has a strong policy prohibiting ALJs from drawing negative credibility inferences when a disability claimant looks for work.  However, Plaintiff concedes that courts may consider applications for unemployment compensation in assessing credibility.  This is well settled in the Seventh Circuit, which has "held that it is appropriate for the ALJ to consider any representations [a claimant] has made to state authorities and prospective employers that she can work."  *Sutton v. Barnhart*, 183 Fed. App'x 555, 561 (7th Cir. 2006) (citing *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (affirming credibility assessment where decision to apply for unemployment benefits was one of several factors adversely impacting credibility)).

22

Finally, Plaintiff contends that the ALJ erred by failing to consider the side effects of Plaintiff's medications.  Medication side effects are one of several factors that an ALJ is to consider, along with the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; treatment other than medication; any other measures the claimant has used to relieve the pain or other symptoms; and functional limitations and restrictions.  20 C.F.R. § 404.1529(c)(3); SSR 96-7p.  While the ALJ need not elaborate on each of these factors when making a credibility determination, he must sufficiently articulate his assessment of the evidence to assure the court that he considered the important evidence and to enable the court to trace the path of his reasoning.  *Neave v. Astrue*, 507 F. Supp. 2d 948, 962 (E.D. Wis. 2007).

Here, Plaintiff testified that his medications made him feel drowsy, dizzy, and tired all the time.  Although the ALJ did not specifically mention side effects (and in fact, incorrectly stated that Plaintiff was not taking any medication for pain), the question of side effects is only one aspect of a credibility assessment.  Here, the ALJ considered a number of factors when assessing Plaintiff's credibility.  The medical record also supports the ALJ's credibility assessment.  The ALJ properly noted that none of plaintiff's treating physicians encouraged Plaintiff to restrict his activities or offered the opinion that he was unable to perform basic work tasks on a sustained basis.  He was not seeking ongoing treatment for his back pain.  As a result, this error in the ALJ's decision does not seriously undermine the adverse credibility finding as to some aspects of Plaintiff's testimony.  *Berger*, 516 F.3d at 546 (stating that an ALJ's credibility assessment will stand "as long as [there is] some support in the record").  Considering the ALJ's explanation of his credibility assessment, this Court cannot conclude that the ALJ's credibility determination was patently wrong.

### D.  Whether the ALJ Erred at Step Four and Five

Plaintiff next argues that the ALJ erred at Step Four and Step Five because (1) he improperly used the medical vocational guidelines; (2) he improperly identified transferable skills; (3) he improperly analyzed the transferability of Plaintiff's skills from previous jobs; (4) he improperly applied the transferable skills to unskilled jobs.  In addition, the ALJ failed to

23

include all of Plaintiff's limitations, including his need for a sit/stand option, his mental
limitations, especially his difficulty concentrating and functioning socially, his inability to carry
a lot of weight, his potential absenteeism, and his medication side effects.

The Commissioner argues that the ALJ properly assessed all relevant evidence, including
objective medical evidence, treatment, doctors' opinions and observations, and Plaintiff's own
statements, and that substantial evidence supports the ALJ's RFC determination.  The
Commissioner bases this conclusion on the fact that none of Plaintiff's treating or examining
doctors restricted his activities.  Specifically, the Commissioner refers to medical records from
Dr. Young, Dr. Wrestler, and Dr. Patel, as follows:  In September 2002, Dr. Young noted that
Plaintiff took no pain medications and recommended starting him on an exercise program.  In
January 2003, Dr. Wrestler "noted many normal objective back findings, including normal
neurological functioning, gait, strength, ranges of back motion."  (#15-2, p. 12 (citing R. 152).)
In April 2004, Dr. Patel found that Plaintiff exhibited normal neurological functioning, a normal
gait, and normal or nearly normal ranges of back motion, and he did not restrict Plaintiff's
functioning in any way.  Based on these doctors' reports, Dr. Bilinsky and Dr. Pilapil, the State
agency physicians, concluded that Plaintiff retained the capacity for medium exertion work.  The
Commissioner contends that the ALJ reasonably relied on the State agency doctors' RFC.  In
support, the Commissioner relies on *Cass v. Shalala*, in which the Seventh Circuit court stated
that, in assessing a claimant's physical and mental impairments, the Commissioner is entitled to
rely on the conclusions of qualified expert medical professionals.  *Cass*, 8 F.3d at 555 (citing
*Moothart v. Bowen*, 934 F.2d 114, 116 (7th Cir. 1991) (holding that the findings of reviewing
physicians, in conjunction with other evidence, constituted substantial evidence in support of the
Secretary's decision to deny benefits)).

Plaintiff has not presented argument nor has he referred to evidence in the record that
supports a need for a sit/stand option, an inability to lift a particular amount of weight, or
potential absenteeism, other than his own testimony.  Plaintiff has not cited any medical
evidence that his doctors have restricted his activities.  Based on Plaintiff's arguments

24

considered above, the Court concluded that Plaintiff has not shown that the ALJ erred when assessing Plaintiff's physical or mental RFC.

The ALJ concluded that Plaintiff had the ability to perform medium exertional level work and to perform "all work activity other than work that requires attention to highly detailed job tasks."  (R. 18-19, 297); 20 C.F.R. § 416.967(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").  He then stated that Plaintiff could perform his past relevant work as an industrial spray painter.  (R. 18.)  This is consistent with the VE's testimony and report.

According to the VE's report, the job of spray painter is classified as unskilled, medium work.  (R. 136.)  The VE testified that a hypothetical individual who is limited to medium work and who is capable of all but detailed instructions would be capable of working as an industrial spray painter.  Thus, based on the ALJ's RFC, Plaintiff is capable of performing his past work as an industrial spray painter.  Plaintiff has failed to establish that the ALJ erred by reaching this conclusion.

The ALJ then went on to consider Plaintiff's ability to work at Step Five.  However, having determined that the ALJ did not err at Step Four, the Court need not consider the Step Five analysis.

While one can sympathize with Plaintiff's difficulties, the Commissioner is permitted to grant social security benefits only to those who are incapable of engaging in any substantial gainful activity by reason of a medically determinable physical or mental impairment.  42 U.S.C. § 423(d); *see Jones v. Shalala*, 10 F.3d 522, 526 (7th Cir. 1993).  If jobs exist which a claimant could perform, he will not be entitled to disability benefits.  *See* 42 U.S.C. § 423(d)(2)(A).  The question this Court must consider is not whether the claimant is disabled, but whether substantial evidence in the record supports the ALJ's finding of no disability.  *Books*, 91 F.3d at 978.  This Court is not free to reweigh conflicting evidence or substitute its own judgment; "so long as

reasonable minds may differ, the [Commissioner's] decision will be upheld." *Lee v. Sullivan*, 988 F.2d 789, 793-94 (7th Cir. 1993).

## IV.  Summary

For the reasons set forth above, this Court recommends that Plaintiff's Motion for Summary Judgment or Remand **(#12)** be **DENIED**.  The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute waiver of objection on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 17th day of October, 2008.

_____ s/ DAVID G. BERNTHAL_____
U.S. MAGISTRATE JUDGE